## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

LORI VIILO, Personal Representative
of the Estate of Joshua Joseph Maslowski,

                        Plaintiff,

v.

Case No. 22-cv-00962
Hon.
Mag.

**KENT COUNTY,** a corporate subunit of Government,
**MICHELLE LAJOYE-YOUNG**, in her individual and official capacity,
**VITALCORE HEALTH STRATEGIES, LLC** d/b/a VITALCORE
CORRECTIONAL HEALTHCARE, d/b/a VITALCORE HEALTH STRATEGIES
AT KCCF, deputies **VANDERMOLEN, SMITH** AOT 080, **BISHOP** AOT055,
**RITZ, MCNEIL, FENNEMA, AJ BERNHARDT, BX CALDER, J. SPRIGGEL,**
nurses **DAVID DEGRAFF, SUE MACMILLAN, JANE DOE PHS 463, JANE
DOE PHS496, JANE DOE CMS 127, and NURSE SONYA,** in their individual
and official capacities,
Defendants.

| | |
|---|---|
| THE MICHIGAN LAW FIRM, PC<br>RACINE M. MILLER (P72612)<br>Attorneys for Plaintiff<br>135 N. Old Woodward Ave, Ste 270<br>Birmingham, MI 48009<br>Phone: (844)464-3476 Fax:<br>(248)237-3690<br>racine@themichiganlawfirm.com | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

## Table of Contents

JURISDICTION, VENUE AND PARTIES....................................................................1

GENERAL ALLEGATIONS .................................................................................5

FACTUAL ALLEGATIONS .................................................................................7

COUNT I - FEDERAL CONSTITUTIONAL VIOLATIONS............................ 13

COUNT II - DEFENDANT KENT COUNTY AND KENT COUNTY SHERIFF 14

YOUNG - VIOLATION OF FEDERAL RIGHTS.................................................. 14

COUNT III - FEDERAL UNITED STATES CONSTITUTIONAL VIOLATIONS
BY INDIVIDUAL DEFENDANTS .............................................................17

COUNT IV - STATE LAW VIOLATION--GROSS NEGLIGENCE.................... 19

COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS........ 21

DAMAGES................................................................................................. 21

DEMAND FOR TRIAL BY JURY ...........................................................23

NOW COMES the Plaintiff, Lori Viilo, Personal Representative for the of the Estate of Joshua Joseph Maslowski, Deceased, by and through counsel, The Michigan Law Firm, PC, by Racine M. Miller, and in support of her Complaint for damages and Demand for Jury states as follows:

<u>JURISDICTION, VENUE AND PARTIES</u>

1.    This is an action seeking to redress the wrongs committed in violation of the constitutional rights of Joshua Maslowski, by Kent County, the Kent County Sheriff, and various officers/personnel employed at the Kent County Jail, pursuant to 42 U.S.C. § 1983. The said officers, acting at all relevant times under the color of state law, demonstrated deliberate indifference to the serious medical needs of Joshua Maslowski, in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as state law. The actions taken against Plaintiff's decedent resulted in severe physical and emotional injury, monetary damage, distress, requiring him to be placed under medical supervision and require medical treatment, and also causing significant damages including, but not limited to, humiliation, anxiety, pain and suffering, emotional damages, and ultimately, loss of life. Defendants' conduct is so egregious and outrageous and intentional, that Plaintiff seeks punitive damages.

2.    This action is brought pursuant to federal statute at 42 U.S.C. § 1981, 1983, 1985 and 1988, for deprivation of rights secured by the federal

1

Constitution at the IV, VIII and XIV Amendments.  Jurisdiction is founded upon 28 U.S.C. § 1331, 1343(1), (3) and (4).  Plaintiff further invokes the pendant jurisdiction of this Court to adjudicate state law claims.

3.   Lori Viilo, is a resident of the City of Newaygo, County of Lenawee, State of Michigan, mother of the deceased and the duly appointed Personal Representative of his estate and brings this action under the Wrongful Death Statute at MCLA 600.2922.

4.   The Plaintiff's decedent, Joshua Maslowski (hereinafter referred to as "Maslowski" or "decedent") was a resident and citizen of Kent County, State of Michigan, at all times relevant to this Complaint.

5.   The amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars.

6.   All events, transactions, or occurrences pertinent hereto, transpired within the County of Kent.

7.   Defendant Kent County (hereinafter referred to as "County") is a municipal corporation organized and existing by virtue of the constitution and laws of the State of Michigan and the Kent County Sheriff's Office is a political subdivision of Kent County.

8.   Defendant Sheriff **MICHELLE LAJOYE-YOUNG**, who is being sued in her individual and official capacity, is a resident of Lenawee County, Michigan and at all material times, was the duly elected Sheriff in Kent

County and head of the Kent County Sheriff's Office and worked to develop jail plans and policies affecting Plaintiff's decedent at the time of Plaintiff's decedent's injury. As Sheriff, her responsibilities included the care, custody, and control of all inmates, as well as the supervision of all staff at the Kent County Jail.

9. Defendants **Vernocke, Edgerle, Vandermolen, Ritz, Bernhardt, Calder, Spriggel, Minnick** and **Bishop** ("the Officer Defendants") are residents of the County of Kent and at all material times were employed by the Kent County Sheriff's Department as corrections officers, acting under color of state law, and within the scope of their capacities as agents, servants, and employees of Defendant County. Each Officer Defendant participated in and/or had knowledge of and failed to intervene in the denial of adequate medical care to Mr. Maslowski, and are hereby sued in their individual capacities.

10. Upon information and belief, at all times relevant hereto, Defendants **DeGraff, MacMillan, Sonya, Doe PHS 493, Doe 496,** and **Doe CMS 127** ("Medical Defendants") were medical personnel employed by Vitalcore and assigned to Kent County Jail. They were responsible for the provision of appropriate medical and mental health care to inmate patients at Kent County Jail between February and April 2021, including Mr. Maslowski, were responsible for the medical and mental health care of inmates of the Kent County Jail and participated in, and/or had knowledge of and failed to

3

intervene in, the denial of adequate medical care to Mr. Maslowski that took place during that time. Their duties included, but were not limited to, caring for all patients in their assigned areas at the Kent County Jail, which included, but was not limited to, cell visits, physical and psychological examinations, identification of acute and chronic conditions, design and implementation of appropriate plans to facilitate care, provision of medications, provision of psychiatric and/or psychological counseling, coordination of treatment with other providers at Kent County Jail, direct oversight and supervision of nursing staff, and/or provision of emergency medical care. At all relevant times hereto, the Medical Defendants were acting under color of state law and within the scope of their capacities as agents, servants, employees, and/or contracted personnel of Defendant County. Their responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of County jails, including County policies, procedures, directives, and protocols, in addition to all relevant local, state, and federal statutes and regulations. The Medical Defendants are sued in their individual capacities.

11.   **VITALCORE HEALTH STRATEGIES, LLC** d/b/a VITALCORE CORRECTIONAL HEALTHCARE, d/b/a VITALCORE HEALTH STRATEGIES AT KCCF (hereinafter referred to as "Vitalcore") is a Kansas Corporation authorized to do business in Michigan and provides contracted health care

4

services to Kent County jail inmates and pre-trial detainees and at all relevant times carried out that contract as state actors and under color of law, provided medical and mental health services to prisoners in Kent County correctional facilities, including the Kent County Jail. In carrying out its duties, Vitalcore was required to ensure that the personnel it employed at Kent County Jail complied with all Kent County and Vitalcore policies, procedures, directives, and protocols in addition to all relevant local, state, and federal statutes, and regulations.

12. At all times relevant to this complaint, Defendants were acting within the scope of their employment and under color of law.

13. At all material times, Defendant Kent County employed all Defendant officers and is liable because its policies, practices, and customs, which were defective, resulted in injury to Plaintiff.

## GENERAL ALLEGATIONS

14. Defendants were the exclusive custodians of Plaintiff's decedent following his arrest and were charged with the responsibility of monitoring him in order to assure his health would not be placed in jeopardy and that if he needed medical aid, he would receive it.

15. By the acts and omissions of Defendants, all of them and each of them, Plaintiff's decedent was left to die under circumstances set forth in greater detail below.

5

16.   Defendants, all of them jointly and severally, are directly liable to Plaintiff's decedent for promulgation of or acquiescence to policies, practices, customs, and/or procedures which caused or contributed to the constitutional deprivation suffered by the Plaintiff, particularly as there was a special custodial relationship between Plaintiff's decedent and the County.

17.   The acts and/or omissions of the individual Defendants, jointly and severally, constitute gross negligence, deliberate indifference, willful and wanton conduct, callous reckless, wanton negligence, and deliberate and intentional disregard of the proper execution of their operational duties as County employees. As such, these Defendants, jointly and severally, are directly liable for the tragic results of their improper, non-discretionary activities.

18.   Defendant County is also liable for the tortious conduct of its officers, employees, and agents, wherein said officers, employees, and agents were acting during the course of their employment and within the scope of their authority while engaged in activities which are carried out in a grossly negligent nature.

19.   Defendant County is also directly liable for its failure to properly train, retain, investigate, monitor, discipline, and/or supervise the individual Defendants in the proper execution of their duties and for failure to

promulgate and enforce proper procedures, guidelines, practices, and
policies to minimize as far as practical all foreseeable risks of harm.

FACTUAL ALLEGATIONS

20.  On March 4, 2021, at 17:47 hours, Plaintiff's deceased, Joshua
Maslowski, a white male who was thirty-nine (39) years of age, was booked
into the Kent County Jail and was a pre-trial detainee with a $5,000/10%
bond stemming from charges related to an assault he allegedly committed
against a former employer for physically withholding his final paycheck
from him a few days prior on February 26, 2021.

21.  At the time of his arrest, Mr. Maslowski reported a head injury,
auditory and visual hallucinations, seeing flashing lights, and suffering from
chronic headaches.

22.  Mr. Maslowski was therefore in obvious need of specialized medical
treatment.  Nonetheless, from the moment he arrived in Kent County
custody, Mr. Maslowski's most basic medical and mental health needs were
ignored.

23.  After Maslowski arrived at Kent County Jail on March 4, 2021, he was
supposed to receive his prescriptions daily, including but not limited to
Lithium, Abilify, and Neurontin (an anti-seizure medication)– but did not
receive any of his prescribed medications until April 12, 2021 – 4 days before
he went into seizures from which he would never recover.

24.   During the time that Kent County was the custodian of the Plaintiff, the County and its officials and agents subjected the Plaintiff to inhumane conditions of confinement and failed to attend to his medical needs related to his head-injury and prescription needs, such failure resulting in the deterioration of his condition and ultimately to his tragic death on April 25, 2021.

25.   Although Plaintiff regularly demonstrated and verbally expressed that he was experiencing the following obvious symptoms of a serious medical issue since the date of his original booking, Defendants did not transport Plaintiff to a hospital until April 16, 2021, after he seized into unconsciousness from which he would never awaken:

      a.   Seizures.

      b.   Headaches.

      c.   Recent head trauma

      d.   Behavior and personality changes.

      e.   Balance and movement problems.

      f.   Death.

26.   Maslowski had been booked on March 4, 2021 – a mere 52 days – before he was ultimately found unresponsive in his cell.

27.   The following events occurred before his death demonstrating serious medical issues and a significant risk of harm if Plaintiff were left untreated,

yet nothing was done to prevent his death or to protect the Plaintiff and no medical care was provided:

a. On March 6, 2021, Maslowski gave written authorization to Vitalcore for medical treatment, and disclosed his pharmacies and daily prescription medications, including tramadol, neurontin, ambilify, protonix, Vistaril, and bactram.

b. On March 8, 2021, Maslowski had "an episode of CP" that he thought was from stress.

c. On March 9, 2021, Plaintiff's decedent complained to Deputy VanderMolen that he thinks he has a concussion, requested medical attention, wanted psyche medication, reported that his head is pounding and that he was seeing flashing lights.  PHS 463 was notified, but nothing was done.

d. On March 11, 2021, Plaintiff's decedent tells AJ Bernhardt that he was hit in the head with a pipe before going into jail, complains of bloody stool, bad headaches, and a broken ear drum.  PHS496 is likewise informed by Plaintiff's decedent and asked to stop ibuprofen and start Excedrin migraine and to see a psychiatric doctor. Nothing was done.

e.   On March 20, 2021, Agitated, yelling, and banging on door, Plaintiff's decedent complained of headache to AOT 080 Smith, but nothing was done.

f.   On March 20, 2021, Plaintiff's decedent requested BX Calder to let him see medical and complained of ulcer to PHS496.  Nothing wass done.

g.   On March 21, 2021, Plaintiff's decedent told Smith he needs his medications.  Nothing was done.

h.   On March 22, 2021, Plaintiff's decedent requested to see medical, and Defendant CFJ Spriggel reported that Plaintiff's decedent "is having random loud outburst.  Just screaming at the top of his lungs during the middle of the night for no apparent reason."  Nothing was done.

i.   On March 22, 2021, BX Calder indicated that Maslowski "claims he is having difficulty breathing from his stomach.  Probably because of all the yelling that he does in his cell." Plaintiff's decedent requested BX Calder to let him see medical. Nothing was done.

j.   On March 24, 2021, Plaintiff's decedent approached and asked for Neurontin, indicating that his prescription was out of Kalamazoo Family Health Center.  Neurontin is an anti-seizure medication. Nothing was done.

k.   On April 4, 2021, Deputy AOT055 Bishop could not awaken Plaintiff's decedent. Nothing was done.

l.   On April 14, 2021 – Plaintiff's decedent had been lying down for most of the day, did not eat lunch, and was laying down screaming, complained to Ritz of constant headaches despite receiving two Tylenol packets that morning. Nothing was done.

m.   On April 14, 2021, at 17:11 – Plaintiffs decedent was screaming in his cell and hit his cell door window, complaining to Ritz about eye and head pain that was severe, and continuous for weeks; Ritz notifies Nurse Sonya who promised to send someone up to see him. Nothing was done.

n.   On April 15, 2021:

    i.   At 16:36, Plaintiff's decedent complained of constant headache to Deputy Ritz, CMS127. No medical care was provided.

    ii.   At 17:17, Plaintiff's decedent was seen throwing up. JM Ritz called medical to advise Nurse Sonya. Plaintiff's decedent wasn't eating and had been laying down most of the day and screaming. No medical care was provided.

    iii.   At 18:25, Plaintiff's decedent had a seizure during dinner. JM Ritz, Deputies McNeil and Fennema, Nurse Dave, "and other medical staff" witnessed this obvious need for immediate

medical attention, but Nurse Dave dismissed it as it "may have been an anxiety attack."

28.  On April 16, 2021 at 1:36 a.m., Plaintiff's decedent was found unresponsive in his cell, having had a series of seizures and wet himself and only then was he finally sent to the hospital, where, after a torpid 9-day hospitalization, he died.

29.  Based on information and belief, the Defendants all knew that Maslowski was prescribed medications, that he was denied his medications, that he had not taken his medications in over a month, and that he needed mental health treatment, the denial of which contributed to a serious and significant decline in his health and ultimate death.

30.  Based on information and belief, the Defendants all had actual knowledge that Maslowski had suffered a head injury, which, if left untreated, would and did lead to a serious decline in his health and ultimate death.

31.  On information and belief, Defendants, had actual knowledge of a significant risk of serious harm to Plaintiff's decedent, and deliberately ignored his medical needs, leading to conscious pain and suffering, and ultimately his death.

32.  That as a direct and proximate result of the aforedescribed unlawful and deliberately indifferent actions of Defendants, committed under color of

law and under their authority as officers of the Kent County Sheriff's Department, Plaintiff's decedent suffered grievous bodily harm, incomprehensible conscious pain and suffering, was deprived of his right to be free from bodily harm, and met his untimely death.

## COUNT I - FEDERAL CONSTITUTIONAL VIOLATIONS

33.  Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

34.  All the Defendants, at all times herein, owed Plaintiff's decedent the duty of protecting his federal constitutional rights, including the following guaranteed rights:

  a.  The right to adequate medical attention while in custody of Defendants;

  b.  The right to be free from bodily harm and injury caused unjustifiably while in custody of Defendants; and

  c.  The right not to be subjected to cruel and unusual punishment.

35.  These Defendants, acting under color of state law, violated these rights by denying Plaintiff's decedent medical attention to a serious medical need in a reasonably foreseeable time after Plaintiff's decedent originally complained about the problem.

36.  As a direct result of the Defendants' conduct, Plaintiff's decedent was caused to sustain severe, intractable and constant pain for weeks before being seen by medical professionals.

37.  Ultimately, Plaintiff's decedent was taken to the hospital where he died.

38.  These actions on the part of all Defendants violated the United States Constitution, particularly the Eighth and Fourteenth Amendments, which is actionable pursuant to 42 U.S.C. §1983.

39.  As a result of Defendants' actions and omissions, Plaintiff's decedent has suffered damages which include, but are not limited to, the following: great pain and suffering, mental anguish, emotional distress, embarrassment, and humiliation, and death.

## COUNT II - DEFENDANT KENT COUNTY AND KENT COUNTY SHERIFF YOUNG - VIOLATION OF FEDERAL RIGHTS

40.  Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth fully herein.

41.  The Defendants owed duties to Plaintiff's decedent which included the duty to provide reasonable and adequate medical attention in a reasonably foreseeable time after Maslowski's original complaints about severe head pain. In addition, these duties include the duty to implement and monitor an adequate hiring and training program for all officers and deputies working at the Kent County Jail so that they would be capable of making decisions about the need for medical care which arose when there was not a health care professional present.

42. These Defendants failed in these above duties to adequately train detention facility/jail personnel, and historically have had a policy, custom, and practice of failing to implement an adequate training program to properly train detention facility/jail personnel.

43. These Defendants adopted, ratified, and/or implemented the policies, practices and procedures which denied Plaintiff's decedent medical treatment within a reasonable period of time and did so with deliberate indifference to Maslowski' serious medical needs, thereby violating Maslowski's constitutional rights.

44. The acts and omissions of the Defendants taken pursuant to the de facto policies, practices and procedures, adopted, ratified, and/or implemented by Defendants, impermissibly condoned and allowed for the denial of proper medical care and treatment to residents of the Kent County Jail, such as Plaintiff's decedent, which amounts to deliberate indifference in the denial of such detainees' civil rights as are guaranteed by the Constitution of the United States.

45. The aforesaid acts and omissions of Defendants were all committed under color of law and under color of their official authority as a County, County Department, County officers/employees, and/or peace officers.

46. The acts and omissions of the Defendants constituted deliberate indifference to the serious and apparent medical needs of Plaintiff's

15

decedent in violation of the Eighth and Fourteenth Amendments to the

Constitution of the United States and, hence, are actionable under 42 U.S.C.

§1983.

47.   Despite Defendants' knowledge of the said illegal policies, practices

and procedures, Defendant's supervisory policy-making officers and officials

or employees of Kent County, as a matter of policy, practice and procedure,

said Defendants:

    a.   failed to take appropriate and necessary steps to discover and determine that said policies, practices and procedures had and would continue to result in injuries to Plaintiff's decedent and those similarly situated; specifically, Defendants failed to have a policy of assessing serious medical need for illnesses common to an ordinary person or, if having such policy, failed to enforce the same.

    b.   failed to discipline and properly supervise the individual officers, deputies, and employees who engaged in the said acts pursuant to these policies, practices and procedures which resulted in Plaintiffs injury;

    c.   failed to effectively train and supervise the said individual Defendants with regard to the proper constitutional and statutory limits of their authority;

    d.   ratified said policies, practices and procedures which caused Maslowski's injury through their deliberate indifference to the effect of said policies, practices and procedures on the constitutional rights of citizens such as Plaintiff;

    e.   failed to formulate or adopt appropriate policies, practices and procedures to instruct and train employees and jail personnel in the implementation of such policies, practices and procedures to protect inmates similarly situated to Plaintiff's decedent;

    f.   adopt and ratify policies, practices and procedures which constitute a violation of the United States Constitution, or played a significant causal role in denial of the constitutional rights of Plaintiff's decedent.

48.  As a result of Defendants actions and omissions, Plaintiff's decedent has suffered damages which include but are not limited to the following: great pain and suffering, mental anguish, emotional distress, embarrassment, humiliation and death.

## COUNT III - FEDERAL UNITED STATES CONSTITUTIONAL VIOLATIONS BY INDIVIDUAL DEFENDANTS

49.  Plaintiff hereby incorporates by reference the preceding paragraphs as though set forth fully herein.

50.  The individual Defendants owed a duty to Plaintiff's decedent as a resident detainee of the Kent County Jail to provide him with appropriate and reasonable medical care upon being told of his medical complaints, including but not limited to:

    a.   proper monitoring of Maslowski's health and physical condition;

    b.   regularly examining Plaintiff's decedent for signs and symptoms of medical illness or disease after he had made complaints regarding such;

    c.   detecting signs and symptoms of Maslowski's serious health condition and providing timely intervention of the same.

51.  Despite the individual Defendants' knowledge of the ongoing suffering of the Plaintiff, they refused to take reasonable steps to provide for

Maslowski's safety and provide medical attention, at variance with constitutional standards as follows:

a.   failing to take heed of the seriousness of Maslowski's complained of condition when they knew or should have known that the Plaintiff's decedent was suffering from a serious medical condition, in this case, brain hemorrhaging, which can be potentially fatal if the patient is not properly attended to;

b.   failing to have Plaintiff's decedent evaluated by a medical professional within a reasonable time of his registering complaints of his condition while in the custody of Defendants, when he was suffering from a potentially fatal medical condition;

c.   failing to have Plaintiff's decedent evaluated at the jail by a nurse, doctor and/or emergency medical service technician when he was in need of immediate medical attention and supervision.

d.   failing to transport Plaintiff's decedent to a medical facility within a reasonable time of his complaints which would have successfully treated Maslowski's condition without resulting in his death;

e.   failing to investigate and communicate the severity of Maslowski's condition when he was suffering in his cell and in the custody of the Kent County Sheriffs Department;

f.   failing to order Maslowski's immediate hospitalization and provide the necessary treatment for the well-known dangers regarding his complaints.

52.   As a direct and proximate result of the individual Defendants failing to respond to Maslowski's requests for and need for medical assistance, Plaintiff's decedent has suffered damages which include but are not limited to the following: great pain and suffering, mental anguish, emotional distress, embarrassment, humiliation and death.

## COUNT IV - STATE LAW VIOLATION--GROSS NEGLIGENCE

53.   Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

54.   The individual Defendants owed a duty to Plaintiff's decedent as a detainee of the Kent County Jail to provide him with appropriate and reasonable medical care consistent with the appropriate community standard, including but not limited to:

    a.   Proper monitoring of Maslowski's health and physical condition;

    b.   Proper, appropriate and necessary diagnosis, treatment and care of his physical complaints;

    c.   Regularly checking on Plaintiff's decedent for signs and symptoms of medical illness; and

    d.   Detecting signs and symptoms of medical illness and attending to his complaints by referring him to the appropriate medical professional.

55.   Despite the individual Defendant's multiple contacts with Plaintiff's decedent and his multiple complaints of constant, pounding head pain and flashing lights, the individual Defendants' refusal to take reasonable steps to provide him medical attention and were grossly negligent in the following particulars:

    a.   Failing to provide Plaintiff's decedent with adequate medical care and attention even though he consistently complained of his distress;

    b.   Providing Plaintiff's decedent with an aspirin when he said it did not alleviate his symptoms;

   c.   Failing to monitor Plaintiff's decedent after he had taken the aspirin to see whether it was the appropriate medical treatment;

   d.   Failing to check with a person with competent training and/or ability to diagnose Maslowski's condition;

   e.   Failing to transport Plaintiff's decedent to a medical facility or doctor's office for evaluation and treatment;

   f.   failing to investigate and/or communicate the severity of Maslowski's condition to anyone who would understand that this was something other than a simple upset stomach; and

   g.   Failing to follow the procedures implemented by the jail and/or failing to implement the proper procedures to take care of inmates such as the Plaintiff's decedent.

56.  Based on the above facts pled in avoidance of governmental immunity, individual Defendants' conduct is exempt from governmental immunity pursuant to MCL 691.1407, because the individual Defendant's conduct in withholding medical care for many days, then providing inappropriate medical care and failing to monitor the Plaintiff' decedent was grossly negligent in that such conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury to Plaintiff's decedent resulted.

57.  As a direct and proximate result of the individual Defendants' gross negligence, Plaintiff's decedent sustained the damages previously enumerated which are incorporated by reference herein, and, therefore, Plaintiff requests damages compensable under Michigan law.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58.   Plaintiff realleges each and every paragraph laid out above as if said paragraph were more fully and specifically laid out herein by reference thereto.

59.   Defendants, and each of them, individually and collectively by their extreme and outrageous conduct intentionally and/or recklessly caused Plaintiff's decedent severe emotional distress as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

60.   As a result of Defendants actions and omissions, Plaintiff's decedent has suffered damages which include but are not limited to the following: great pain, mental anguish, emotional distress, embarrassment, and humiliation, and death.

## DAMAGES

61.   Plaintiff repeats and re-alleges the preceding paragraphs as if fully set forth.

62.   As a direct and proximate result of the acts and omissions complained of herein, Plaintiff's decedent suffered:

      a.   Extreme fear;

      b.   Severe anxiety;

      c.   Extreme physical pain and severe suffering;

      d.   Extreme shock;

    e.  Extreme embarrassment and severe humiliation.

    f.  Outrage;

    g.  Emotional distress;

    h.  Psychological distress;

    i.  Physical distress;

    j.  Anguish;

    k.  Other physical, psychological and emotional damages;

    l.  Loss of life; and

    m. Wrongful death and attendant losses.

70.    As a direct proximate result of the acts and omissions complained of herein, Plaintiff and the heirs at law of Plaintiff's decedent have suffered:

    a.  Loss of a loved one;

    b.  Loss of support;

    c.  Loss of society and companionship;

    d.  Loss of services;

    e.  Hedonic damages;

    f.  Mental suffering and sorrow;

    g.  Funeral and burial expenses;

    h.  and any other imaginable loss, damage, injury or expense;

WHEREFORE, for all the above reasons, Plaintiff demands judgment against Defendants, jointly and severally, in whatever amount he is found to be entitled, as determined by the trier of fact, together with punitive and/or exemplary damages, costs, interests, attorney fees, including but not limited to such attorney fees as are allowable under 42 USC §1988.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC

/s/ Racine M. Miller
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
135 N. Old Woodward, Ste 279
Birmingham, MI 48009
Ph:844.464.3476Fx:248.237.3690
Dated: October 14, 2022          racine@themichiganlawfirm.com

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, by and through the undersigned
attorneys, and hereby demands a trial by jury of each and every matter
at issue in the above-entitled cause.

Respectfully submitted,

THE MICHIGAN LAW FIRM, PC
/s/ Racine M. Miller
RACINE M. MILLER (P72612)
Attorneys for Plaintiff
135 N. Old Woodward, Ste 279
Birmingham, MI 48009
Ph:844.464.3476Fx:248.237.3690
Dated: October 14, 2022          racine@themichiganlawfirm.com