**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

Lori Viilo, as Personal Representative for the Estate of Joshua Joseph Maslowski

Plaintiff,

Case No: 1:22-cv-00962
Honorable Phillip J. Green

v.

Kent, County of, et al.

Defendants.

THE MICHIGAN LAW FIRM
Racine M. Miller (P72612)
*Attorney for Plaintiff*
135 N. Old Woodward Ave., Suite 270
Birmingham, MI 48009
(844) 464-3476
racine@themichiganlawfirm.com

VARNUM LLP
Timothy E. Eagle (P38183)
*Attorney for the Kent County Defendants*
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6537
teeagle@varnumlaw.com

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)
John C. Cardello (P58082)
*Attorneys for VitalCore Health Strategies, LLC, David DeGraff, R.N., Mary Sue MacMillan, R.N, and Sonya Rawls, R.N..*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

**DEFENDANTS VITALCORE HEALTH STRATEGIES, LLC, DAVID DEGRAFF, R.N., MARY SUE MACMILLAN, R.N., AND SONYA RAWLS, R.N.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

NOW COME Defendants VITALCORE HEALTH STRATEGIES, LLS, DAVID DEGRAFF, R.N., MARY SUE MACMILLAN, R.N., and SONYA RAWLS, R.N., by and through their attorneys, CHAPMAN LAW GROUP, and for their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

1. Plaintiff Lori Viilo filed her Complaint in this matter on October 14, 2022. **(PageID.1-25)**.

2. Plaintiff alleges Defendant VitalCore Healthcare Strategies, L.L.C., ("VitalCore") is liable for the promulgation of practices, customs, and/or procedures which caused or contributed to the constitutional deprivation suffered by the Plaintiff's decedent, Joshua Maslowski ("Maslowski"). **(PageID.8, ¶ 16)**.

3. Plaintiff alleges that all individual Defendants are liable for refusing to take reasonable steps to provide for Maslowski's safety and provide medical attention, at variance with constitutional standards. **(PageID.19-20, ¶ 51)**.

4. Plaintiff also alleges Gross Negligence against the individual Defendants. (**PageID.21**).

5. Finally, Plaintiff alleges Intentional Infliction of Emotional Distress against all Defendants. (**PageID.23**).

6. To the extent that Plaintiff alleges that VitalCore promulgated or acquiesced to unconstitutional policies, this claim must fail because Plaintiff has not pled any facts that indicate these official policies exist, what the policies are, or that VitalCore knew of the constitutional deficiencies and deliberately disregarded the known or obvious consequences. *Winkler v. Madison Cty.*, 893 F.3d 877, 901-02 (6th Cir. 2018).

7. Plaintiff's allegations that the individual VitalCore Defendants violated Maslowski's constitutional rights should be dismissed. The Complaint fails to sufficiently plead that (1) a reasonable jail official (knowing what the particular official knew at the time of the incident) would have known that the inmate was suffering from a serious medical need that posed an excessive risk to his health; and (2) that the particular official knew that non-intervention would create an unjustifiably high risk of harm to the inmate's health and ignored that risk. *Trozzi v. Lake Cnty.*, 29 F.4th 745, 758 (6th Cir. 2022).

8. Plaintiff's Gross Negligence claim should be dismissed. Michigan does not recognize an independent cause of action for gross negligence. *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012).

9. Finally, Plaintiff's Intentional Infliction of Emotion Distress claim should be dismissed. Even accepting as true the allegations in Plaintiff's Complaint, they fail to describe conduct so extreme or outrageous that it surpasses all bounds of decency in a civilized society. *Graham v. Ford*, 237 Mich. App. 670, 674; 604 N.W.2d 713 (1999).

10. Pursuant to LCivR 7.1(d), undersigned counsel sought concurrence from Plaintiff's counsel for this Motion. Concurrence was not obtained.

WHEREFORE, VITALCORE HEALTH STRATEGIES, LLS, DAVID DEGRAFF, R.N., MARY SUE MACMILLAN, R.N., and SONYA RAWLS, R.N., respectfully request that this Honorable Court grant this Motion, dismiss Plaintiff's claims against them with prejudice, and provide any and all further relief that is just and equitable.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: December 16, 2022

*/s/John C. Cardello*
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
John C. Cardello (P58082)
*Attorneys for VitalCore Health Strategies, L.L.C., David Degraff, Sue Macmillan, and Sonya Rawls*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

Lori Viilo, as Personal Representative for the
Estate of Joshua Joseph Maslowski

Case No: 1:22-cv-00962
Honorable Phillip J. Green

Plaintiff,

v.

Kent, County of, et al.

Defendants.

---

THE MICHIGAN LAW FIRM
Racine M. Miller (P72612)
*Attorney for Plaintiff*
135 N. Old Woodward Ave., Suite 270
Birmingham, MI 48009
(844) 464-3476
racine@themichiganlawfirm.com

VARNUM LLP
Timothy E. Eagle (P38183)
*Attorney for the Kent County Defendants*
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501
(616) 336-6537
teeagle@varnumlaw.com

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
John C. Cardello (P58082)
*Attorneys for VitalCore Health Strategies, LLC, David DeGraff, R.N., Mary Sue MacMillan, R.N, and Sonya Rawls, R.N..*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

---

**BRIEF IN SUPPORT OF DEFENDANTS VITALCORE HEALTH STRATEGIES, LLC, DAVID DEGRAFF, SUE MACMILLAN, AND SONYA RAWLS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS


INDEX OF AUTHORITIES ..... iii
INDEX OF EXHIBITS ..... v
STATEMENT OF ISSUES PRESENTED ..... vi
CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT ..... vii
I. STATEMENT OF FACTS ..... 1
II. LEGAL STANDARD ..... 1
III. LAW AND ARGUMENT ..... 2
1. Plaintiff's Fourteenth Amendment Claim Against VitalCore Should be Dismissed ..... 2
A. Official Policies ..... 3
B. Actions Taken by Officials with Final Decision-Making Authority ..... 3
C. Failure to Train or Supervise ..... 3
D. Custom of Acquiescence or Inaction ..... 5
2. Any Supervisory Claims Against Defendant VitalCore Should be Dismissed ..... 6
3. Plaintiff's Fourteenth Amendment Claims Against the Individual VitalCore Defendants Should be Dismissed ..... 7
A. Defendant Mary Sue MacMillan ..... 9
B. Defendant Nurse Sonya ..... 9
C. David DeGraff ..... 12
4. Plaintiff's Gross Negligence Claim Should be Dismissed ..... 13
5. Plaintiff's Intentional Infliction of Emotional Distress Claim Should be Dismissed ..... 14
6. Defendants Are Entitled to Qualified Immunity ..... 15
IV. CONCLUSION AND RELIEF REQUESTED ..... 17

# INDEX OF AUTHORITIES

**CASES**

*Graham v. Ford*, 237 Mich. App. 670, 674; 604 N.W.2d 713 (1999)........................................ 15

*City of Tahlequah v. Bond*, 142 S.Ct. 9, 11, 211 L.Ed.2d 170 (2021)....................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)............................................................ passim,1

*Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015). ........................................................... 2

*Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). ........................................................ 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). ......................................................... 1, 9

*Brawner v. Scott County*, 14 F.4th 585, 596-97 (6th Cir. 2021)...................................................... 7

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ......................................................................... 16

*City of Revere v. Mass. Gen Hospital*, 463 U.S. 239, 243-44 (1983)........................................... 7

*Costa v. Cmty. Emergency Med. Servs., Inc.*, ........................................................................ 14

*Cummins v. Robinson Twp.*, 770 N.W.2d 421, 433 ................................................................. 14

*Cunningham v. Shelby County*, 994 F.3d 761, 764 (6th Cir. 2021)............................................. 16

*Dalley v. Dykema Gossett, PLLC*, 287 Mich. App. 296, 321; 788 N.W.2d 679 (2010).............. 15

*D'Ambrosio v. Marino*, 747 F.3d 378, 387-88 (6th Cir. 2014) ...................................................... 5

*Doe v. Claiborne Cty.*, 103 F.3d 496, 508 (6th Cir. 1996) ........................................................... 5

*Doe v. Mills*, 212 Mich. App. 73, 91; 536 N.W.2d 824 (1995). ................................................. 15

*Dominguez v. Correctional Medical Services*, 555 F.3d 543, 546-48 (6th Cir. 2009), ................ 16

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).......... 4

*Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ............................................................. 12

*Greene v. Crawford County*, 22 F.4th 593,606 (6th Cir. 2021)................................................. 7, 8

*Gregory v. City of Louisville*, 444 F.3d 725, 763 (6th Cir. 2006)................................................. 5

*Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) ........................................................ vii, 6

*Hernandez v. Mesa*, 137 S.Ct. 2003, 2007, 198 L.Ed.2d 625 (2017) ......................................... 17

*Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)) ............................................... 2

*Johnson v. Karnes*, 398 F.3d 868, 877........................................................................................ 2

*Johnson v. Williams*, 2017 U.S. Dist. LEXIS 156149, at *48 (E.D. Mich. Sept. 25, 2017)......... 14

*Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012).......................... 14

*Maxwell v. Corr. Med. Servs., Inc.* 538 F. App'x 682, 691 (6th Cir. 2013)................................... 2

*Monell v. Department of Social Servs.*, 436 U.S. 658, 663 (1978);.............................................. 6

*Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988)........................................................................ 6

*Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 7, 211 L.Ed.2d 164 (2021) ....................................... 16

*Rouster v. County of Saginaw*, 749 F.3d 448-49 (6th Cir. 2014) ................................................ 11

*Sawabini v. Desenberg*, 143 Mich. App. 373, 383; 372 N.W.2d 559 (1985).............................. 15

*Shadrick v. Hopkins Cty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) .................................................. 4

*Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)........................................... vii

*Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993)................................................. vii

*Street v. Corrections Corporation of America*, 102 F.3d 810, 817-818 (6th Cir. 1996). ............... 6

*Trozzi v. Lake Cnty.*, 29 F.4th 745 (6th Cir. 2022). ................................................................ passim

*White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 550, 196 L.Ed.2d 463 (2017). ........................... 16,17

*Winkler v. Madison Cty*. 893 F.3d 877, 904 ........................................................................... passim

**RULES**

Fed. R. Civ. P. 8(a)(2)) ........................................................................................................ vii

## INDEX OF EXHIBITS

| | |
|---|---|
| **EXHIBIT A** | *Maxwell v. Corr. Med. Servs.*, 538 Fed. Appx. 682, 691 (6th Cir. 2013) |
| **EXHIBIT B** | *Johnson v. Williams*, 2017 U.S. Dist. LEXIS 156149, at *48 (E.D. Mich. Sept. 25, 2017) |

## STATEMENT OF ISSUES PRESENTED

I. SHOULD PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM AGAINST VITALCORE BE DISMISSED?

| | |
|---|---|
| Defendants Answer: | YES. |
| Plaintiff Answers: | NO. |

II. SHOULD PLAINTIFF'S SUPERVISORY CLAIMS AGAINST VITALCORE BE DISMISSED?

| | |
|---|---|
| Defendants Answer: | YES. |
| Plaintiff Answers: | NO. |

III. SHOULD PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL VITALCORE DEFENDANTS BE DISMISSED?

| | |
|---|---|
| Defendants Answer: | YES. |
| Plaintiff Answers: | NO. |

IV. SHOULD PLAINTIFF'S GROSS NEGLIGENCE CLAIM BE DISMISSED?

| | |
|---|---|
| Defendants Answer: | YES. |
| Plaintiff Answers: | NO. |

V. SHOULD PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM BE DISMISSED?

| | |
|---|---|
| Defendants Answer: | YES. |
| Plaintiff Answers: | NO. |

VI. ARE THE VITALCORE DEFENDANTS ENTITLED TO QAULIFIED IMMUNITY?

| | |
|---|---|
| Defendants Answer: | YES. |
| Plaintiff Answers: | NO. |

**<u>CONTROLLING/APPROPRIATE AUTHORITY FOR RELIEF SOUGHT</u>**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A court may decide a motion to dismiss on the basis of the pleadings alone. *Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993). In considering such a motion, the Court need not accept plaintiff's legal conclusions or "unwarranted factual inferences." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

## I. STATEMENT OF FACTS

On October 14, 2022, Plaintiff Lori Viilo, as Personal Representative of the Estate of Joshua Joseph Maslowski ("Maslowski"), deceased, filed this lawsuit against VitalCore Health Strategies, LLC ("VitalCore"), several of VitalCore's nurse employees, as well as Kent County, Kent County Sheriff Young, and several officers who worked at the Kent County Correctional Facility. (**PageID.1-25**). Plaintiff alleges that the VitalCore Defendants violated Maslowski's rights under the Eighth and Fourteenth Amendments of the Constitution of the United States by being deliberately indifferent to his serious medical needs while he was an inmate at the Kent County Correctional Facility. Plaintiff also claims that the individual VitalCore Defendants are liable for Gross Negligence and Intentional Infliction of Emotional Distress.

The VitalCore Defendants now move this Honorable Court to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Fed. R. Civ. P. 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Instead, factual enhancement is required to "nudge[] the[] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant" is responsible for the alleged conduct. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[A] complaint plead[ing] facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

While Plaintiff is not required to make "detailed factual allegations[]" to survive a Fed. R. Civ. P. 12(b)(6) motion, the pleading requirements imposed by Fed. R. Civ. P. 8 "demand more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"[N]aked assertions devoid of further factual enhancement" preclude the Court from inferring that they were responsible for violating a plaintiff's civil rights. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.

## III. <u>LAW AND ARGUMENT</u>

### 1. *Plaintiff's Fourteenth Amendment Claim Against VitalCore Should be Dismissed*

Plaintiff alleges that Defendant VitalCore violated the constitutional right of Maslowski to adequate medical care. '"Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory,' but rather 'for a policy or custom *of that private contractor*,'" *Winkler v. Madison Cty.* 893 F.3d 877, 904 (6th Cir. 2018) (citing and quoting *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (emphasis in original)). Regardless of the underlying constitutional violation, a policy or custom can be established if "a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision, or (4) a custom of tolerance or acquiescence of federal violations." *Id.* at 901. (quoting *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015)). Under any approach, Plaintiff must plead facts that would prove the policy is the "'moving force' behind the violation of the plaintiff's constitutional rights." *Maxwell v. Corr. Med. Servs., Inc.* 538 F. App'x 682, 691 (6th Cir. 2013) (quoting *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)) (**Exhibit A**).

In the instant case, Plaintiff's theory of municipal liability against VitalCore is difficult to discern. In paragraph 16 of the Complaint, Plaintiff alleges that:

> Defendants, all of them jointly and severally, are directly liable to Plaintiff's decedent for promulgation of or acquiescence to policies, practices, customs, and/or procedures which caused or contributed to the constitutional deprivation suffered by the Plaintiff, particularly as there was a special custodial relationship between Plaintiff's decedent and the County. (**PageID.8**).

There are no further allegations regarding specific policies that Plaintiff claims were developed, promulgated, or acquiesced to by VitalCore.

***A. Official Policies***

If Plaintiff is pursuing an official policy claim against VitalCore, she must plead that a policy is facially unconstitutional or facts that indicate the government contractor acted pursuant to those policies "with 'deliberate indifference' as to its known or obvious consequences." *Winkler*, 893 F.3d at 901-02. The Complaint here contains only legal conclusions. Plaintiff does not plead any facts that indicate these official policies exist, what the policies are, or that VitalCore knew of the constitutional deficiencies and deliberately disregarded the known or obvious consequences. As such, Plaintiff has failed to state a claim for unconstitutional official policies against VitalCore.

***B. Actions Taken by Officials with Final Decision-Making Authority***

Plaintiff does not name any VitalCore officials alleged to have final decision-making authority. Nor are any unconstitutional actions of any VitalCore officials regarding a policy or custom alleged in the Complaint. Therefore, Plaintiff has failed to state a claim under this theory of liability.

***C. Failure to Train or Supervise***

Plaintiff's allegations of failure to train are specifically directed against Defendants Kent County and Kent County Sheriff Young ***only***. (**PageID.16, 17, 18; ¶¶ 41, 42, 47c, 47e**).

Nevertheless, even if these allegations were applied to VitalCore, they are inadequate to state a claim.

Plaintiff must plead facts that would prove "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [contractor's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler*, 893 F.3d at 902 (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). Deliberate indifference can be shown "where the [contractor] fails to act in response to repeated complaints of constitutional violations by its [employees]," *id.* at 903 (quoting *Ellis*, 455 F.3d at 700-01), or through "a single violation of federal rights, accompanied by a showing that [the contractor] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 738-39 (6th Cir. 2015) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff fails to plead facts that would prove the first and third elements. She does not plead what training VitalCore provided or how it was inadequate, nor does she assert what training would be adequate. As to causation, Plaintiff only offers legal conclusions.

Plaintiff also fails to plead the second element, i.e., deliberate indifference. First, the Complaint does not indicate that VitalCore knew of any other complaints of constitutional violations, much less that they failed to act. Moreover, Plaintiff fails to plead deliberate indifference through single-incident liability. Instead, Plaintiff only offers a bare legal assertion that the alleged constitutional violations Maslowski suffered were the consequence of a failure to train. Plaintiff does not allege what the training of the individual VitalCore Defendants in this case was or that they did not receive training such that a predictable and obvious consequence would be the violation

of constitutional rights, i.e., something more than medical malpractice. See *Winkler*, 893 F.3d at 903.

***D. Custom of Acquiescence or Inaction***

To plead that there is a custom of acquiescence or inaction, Plaintiff must allege:

> (1) "a clear and persistent" pattern of unconstitutional conduct by [] employees; (2) the [contractor's] "notice or constructive notice" of the unconstitutional conduct; (3) the [contractor's] "tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction'; and (4) that the policy of inaction was the "moving force" of the constitutional deprivation, such that the plaintiff's constitutional injury was directly caused by the conduct of the [contractor's] rather than simply by the conduct of the [] employee.

*D'Ambrosio v. Marino*, 747 F.3d 378, 387-88 (6th Cir. 2014) (quoting *Doe v. Claiborne Cty.*, 103 F.3d 496, 508 (6th Cir. 1996) (some alterations in original). Plaintiff does not allege facts that would satisfy these elements.

First, Plaintiff does not plead a clear and consistent pattern of unconstitutional conduct. Although she alleges isolated instances of alleged misconduct, Maslowski's detention is considered a "single instance," not a pattern of alleged unconstitutional conduct. *Gregory v. City of Louisville*, 444 F.3d 725, 763 (6th Cir. 2006).

As to the second and third elements, Plaintiff again fails to plead that VitalCore had any knowledge of the alleged inadequate medical treatment or that it tacitly approved of such conduct. There is nothing in the Complaint that would permit a reasonable inference that VitalCore knew of the constitutional violations and then tacitly approved of them by failing to act.

Finally, Plaintiff provides no facts that indicate a policy or custom of inaction was the moving force behind the violations of Maslowski's rights. She only states that "[a]s a result of Defendants actions and omissions, Plaintiff's decedent has suffered damages which include but

are not limited to the following: great pain and suffering, mental anguish, emotional distress, embarrassment, humiliation and death." (**PageID.19; ¶ 48**). This allegation is conclusory. Plaintiff fails to state a claim that VitalCore had a custom of acquiescence or inaction.

For these reasons, Plaintiff's constitutional claims against Defendant VitalCore do not satisfy the pleading requirements of a *Monell* claim and should be dismissed.

2. *Any Supervisory Claims Against Defendant VitalCore Should be Dismissed*

It is well-established that there is no *respondent superior* or vicarious liability in 42 U.S.C. § 1983 cases. *Monell v. Department of Social Servs.*, 436 U.S. 658, 663 (1978); *Dunn v. State of Tenn.*, 697 F.2d 121, 128 (1983); *Street v. Corrections Corporation of America*, 102 F.3d 810, 817-818 (6th Cir. 1996). Supervisory liability under § 1983 is precluded even if the supervising entity is aware of improper activity of its subordinates and fails to act; it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

Here, Plaintiff specifically alleges failure to supervise against Defendants Kent County and Sheriff Young ***only***. Even if applicable to VitalCore, Plaintiff merely offers unsubstantiated conclusions. Plaintiff alleges that the Kent County Defendants "failed to discipline and properly supervise the individual officers, deputies and employees who engaged in the said acts pursuant to these policies, practices and procedures which resulted in Plaintiffs [sic] injury." (**PageID.18, ¶ 47b**). There are no specific facts alleged to support that any Defendant authorized, approved, or knowingly acquiesced in the purportedly unconstitutional conduct of the other Defendants. Such boilerplate recitations need not be accepted by the court as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). (The court need not accept as true legal conclusions or unwarranted factual inferences).

*3. Plaintiff's Fourteenth Amendment Claims Against the Individual VitalCore Defendants Should be Dismissed*

Jail officials violate a pre-trial prisoner's 14th Amendment right to constitutionally adequate medical treatment when they display deliberate indifference to serious medical needs. *City of Revere v. Mass. Gen Hospital*, 463 U.S. 239, 243-44 (1983). The analysis of deliberate indifference examines whether the providers acted "recklessly in the face of an unjustifiably high risk" that is either "known or so obvious that it should be known." *Brawner v. Scott County*, 14 F.4th 585, 596-97 (6th Cir. 2021) (quotation omitted); *Greene v. Crawford County*, 22 F.4th 593,606 (6th Cir. 2021).

The inquiry is objective. It scrutinizes whether the defendants acted recklessly in response to a danger, "even though a reasonable official" in the same position would have known about an excessive risk. *Brawner*, at 597; *Greene*, at 606. Negligence is insufficient. *Brawner*, at 596. Instead, the standard requires objectively established "recklessness." *Greene*, at 606.

*Brawner*'s standard for deliberate indifference was recently explained in *Trozzi v. Lake Cnty.*, 29 F.4th 745 (6th Cir. 2022). It embraces separate inquiries into whether an official (1) recklessly failed to act (2) even though a reasonable official would have known there was a serious medical need. *Trozzi*, at 757, citing *Brawner* at 597.

> And this view – bifurcating knowledge of the underlying conduct from knowledge about the detainee's needs – has its genesis in *Kingsley*, (576 U.S. 389 (2015)) which recognized that constitutional due process claims include "two separate state-of-mind questions." 576 U.S. at 395. One inquiry entails an objective inquiry into a "series of events in the world," while the other considers the defendant's actual intentions as to his own conduct. *Id.*, at 396. Applying *Kingsley* in the context of an inadequate medical care claim, the latter state-of-mind questions includes an inquiry into whether the defendant actually understood the consequences of failing to act. In other words, just as a use of force in and of itself is insufficient to demonstrate a constitutional tort, **so too is a simple inaction in the face of an objectively serious**

**medical need insufficient to demonstrate deliberate indifference in violation of the 14th Amendment.**

*Trozzi*, at 757 (quotations in original; parenthetical citation added; emphasis added)

Accordingly, Plaintiff must plead sufficient facts that allows the Court to draw the reasonable inference (1) that the inmate manifested an objectively serous medical need; (2) that a reasonable jail official at the scene, knowing what the particular jail official knew at the time of the underlying incident, would have understood that the prisoner's medical need created an excessive risk of harm, and (3) the jail official knew that his or her failure to respond would pose a serious risk to the prisoner but nonetheless ignored that risk. *Trozzi*, at 757-58. Thus, *Brawner*'s subjective prong of the deliberate indifference test "considers whether the detainee's medical need would have been apparent or detectible to a reasonable official at the scene armed with the defendant's actual knowledge." *Id.*, at 760; *Greene*, at 613 (considering the official's "knowledge of (the detainee's) condition).

*Brawner*'s mens rea *knew-or-should-have-known* threshold requires Plaintiff to plead an objectively serious need about which the nursing staff either knew or should have known, and which they then ignored. In accordance with *Trozzi*, what the nursing staff *should-have-known* requires close scrutiny of whether the detainee's medical need would have been apparent or detectable to a reasonable nurse at the scene armed with the defending nurse's actual knowledge. *Trozzi*, at 755.

Additionally, because the courts cannot impute knowledge from one defendant to another, each nurse's position must be evaluated individually. *Greene*, at 607; *Trozzi*, 758. Such individualized consideration demands careful analysis of what each individual nurse is alleged to have known, when each individual nurse knew it, and how each individual nurse reacted as the facts changed with each turn of events.

***A. Defendant Mary Sue MacMillan***

Plaintiff alleges that Defendant Mary Sue MacMillan was among "medical personnel employed by Vitalcore [sic] and assigned to Kent County Jail." (**PageID.5, ¶ 10**). In the same paragraph of the Complaint, Plaintiff generically alleges that all "Medical Defendants" "were responsible for the medical and mental health care of inmates of the Kent County Jail and participated in, and/or had knowledge of and failed to intervene in, the denial of adequate medical care to Mr. Maslowski that took place during that time." *There is no further mention of Defendant MacMillan in the Complaint*. Instead, Plaintiff makes the following conclusory allegations:

> As a result of Defendants' actions and omissions, Plaintiff's decedent has suffered damages which include, but are not limited to, the following: great pain and suffering, mental anguish, emotional distress, embarrassment, and humiliation, and death.

(**PageID.16, ¶ 39**)

> As a direct and proximate result of the individual Defendants failing to respond to Maslowski's requests for and need for medical assistance, Plaintiff's decedent has suffered damages which include but are not limited to the following: great pain and suffering, mental anguish, emotional distress, embarrassment, humiliation and death.

(**PageID.20, ¶ 52**)

While Plaintiff is not required to make "detailed factual allegations[]" to survive a Fed. R. Civ. P. 12(b)(6) motion, the pleading requirements imposed by Fed. R. Civ. P. 8 "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555.

Because Plaintiff presents *no* factual allegations regarding Defendant MacMillan's alleged constitutional violations, all claims against her must be dismissed.

***B. Defendant Nurse Sonya***

Plaintiff has sued "Nurse Sonya." Plaintiff is presumably referring to Sonya Rawls, R.N., who was employed by VitalCore at the Kent County Correctional Facility during times relevant. In similar fashion to Defendant MacMillan, Plaintiff first mentions Nurse Sonya in the general allegations against all "Medical Defendants" in paragraph 10 of the Complaint. (**PageID.5**). The next reference to Nurse Sonya is in paragraph 27m which states that:

> On April 14, 2021, at 17:11 – Plaintiffs [sic] decedent was screaming in his cell and hit his cell door window, complaining to Ritz about eye and head pain that was severe, and continuous for weeks; Ritz notifies Nurse Sonya who promised to send someone up to see him. Nothing was done.

(**PageID.13**)

The final allegation specifically related to Nurse Sonya states:

> At 17:17 (on April 15, 2021), Plaintiff's decedent was seen throwing up. JM Ritz called medical to advise Nurse Sonya. Plaintiff's decedent wasn't eating and had been laying down most of the day and screaming. No medical care was provided.

(**PageID.13, ¶ 27(n)**)

There is no further reference to Nurse Sonya in the Complaint.

Even if accepted as true, these allegations do not contain sufficient factual matter for the Court to draw the reasonable inference that Nurse Sonya is liable for a violation of Maslowski's constitutional rights. *Iqbal*, 556 U.S. at 678.

At the outset, we may assume *arguendo* that Plaintiff has sufficiently *alleged* that Maslowski had an objectively serious medical need.[1] Therefore, it must be determined whether Plaintiff has sufficiently pled that (1) a reasonable jail official (knowing what the particular official knew at the time of the incident) would have known that the inmate was suffering from a serious

---

[1] Nevertheless, VitalCore Defendants do not concede that Plaintiff's decedent actually had an objectively serious medical need.

medical need that posed an excessive risk to his health; and (2) that the particular official knew that non-intervention would create an unjustifiably high risk of harm to the inmate's health and ignored that risk. *Trozzi*, at 758.

Starting with the first prong, the Complaint does not allege sufficient facts to conclude that a reasonable official in Nurse Sonya's position (without the benefit of hindsight) would have known that Maslowski was suffering from a serious medical condition requiring immediate help. First, the Complaint states that Maslowski was receiving ibuprofen by March 11, 2021, had received his prescribed anti-seizure medication on April 12, 2021, and was taking Tylenol on April 14, 2021. (**PageID.9,11,13**). Because he was being treated with medications, Maslowski's complaint of a headache on April 14, 2021, standing alone, would not lead a reasonable nurse to seek outside, emergency medical help. Nor is the fact that he vomited the next day indicative of a serious medical condition requiring immediate outside medical treatment. Furthermore, Plaintiff pleads no facts that Nurse Sonya knew of Maslowski's medical history. Even if she knew of his previous complaints of headaches, failure to immediately act upon an inmate's self-diagnosis does not amount to a constitutional violation. See *Trozzi v. Lake Cnty.*, 29 F.4th 745, 758-59 (6th Cir. 2022) (failure to call 911 in response to prisoner's complaint of stomach pain was not a constitutional violation); *Rouster v. County of Saginaw*, 749 F.3d 448-49 (6th Cir. 2014) (failure to provide adequate treatment in response to a prisoner's complaints of stomach pain was not a constitutional violation); *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) (failure to provide adequate treatment in response to a prisoner's self-diagnosed ailments does not amount to a constitutional violation).

With respect to the second prong of the deliberate indifference test, Plaintiff has not alleged facts that Nurse Sonya actually knew of any unjustifiably high risk of failing to take immediate

action. The state-of-mind question includes an inquiry into whether the defendant actually understood the consequences of failing to act. "In other words, just as a use of force in and of itself is insufficient to demonstrate a constitutional tort, so too is simple inaction in the face of an objectively serious medical need insufficient to demonstrate deliberate indifference in violation of the Fourteenth Amendment." *Trozzi*, at 757. Even a strong showing that the detainee needed medical attention does not necessarily tell anything about a jail official's state-of-mind with respect to the need to intervene. *Id.* at 760.

Because Plaintiff has failed to allege any facts specifically related to Defendant Sonya's state of mind, the claims against her must be dismissed.

***C. David DeGraff***

The only specific allegation made regarding Defendant DeGraff is apparently contained in paragraph 27 of the Complaint which refers to "Nurse Dave":

> At 18:25 (on April 15, 2021), Plaintiff's decedent had a seizure during dinner. JM Ritz, Deputies McNeil and Fennema, Nurse Dave, "and other medical staff" witnessed this obvious need for immediate medical attention, but Nurse Dave dismissed it as it "may have been an anxiety attack."

(**PageID.13, ¶ 27nii)**

Under the first prong of the deliberate indifference test, the Complaint does not allege sufficient facts to conclude that a reasonable official in Defendant DeGraff's position (without the benefit of hindsight) would have known that Maslowski was suffering from a serious medical condition requiring immediate help. The Complaint claims that "Nurse Dave" witnessed Maslowski having a seizure during dinner. It does not allege, however, that Maslowski became incapacitated or unresponsive. Indeed, Maslowski was sent out to the hospital early the next day when he *was* found unresponsive in his cell. (**PageID.14**). This implies that he had recovered from

the seizure sufficiently to return to his cell. A reasonable nurse, knowing what DeGraff knew at the time of the incident, would not have known that a transient seizure posed an excessive risk to Maslowski's health. All that Plaintiff alleges is the conclusory statement that DeGraff "witnessed this obvious need for immediate medical attention…"

Even if the pleading sufficiently states that DeGraff *should have known* that Maslowski was suffering from a serious medical condition requiring immediate medical help, the Complaint does not state facts showing that DeGraff had a culpable state of mind. The second prong of the deliberate indifferent test requires a showing that the particular official knew that non-intervention would create an unjustifiably high risk of harm to the inmate's health and ignored that risk. *Trozzi*, at 758. In fact, the Complaint states that DeGraff believed that Maslowski's condition "may have been an anxiety attack." (**PageID.14**). This does not support an allegation that DeGraff knew that Maslowski was having a seizure and ignored it, knowing that not intervening would create an unjustifiable risk to Maslowski's health. Misdiagnosis of an inmate's medical condition, even with lethal consequences, does not necessarily rise to deliberate indifference. See *Winkler*, 893 F.3d at 892-93 ("Although [the defendant's] assessment and treatment of [the detainee] might not present the best of medical practices, her actions to not suggest deliberate indifference to a known risk to [the detainee's] health.").

Because Plaintiff has failed to allege any facts specifically related to Defendant DeGraff's state of mind, the claims against him must be dismissed.

4. *Plaintiff's Gross Negligence Claim Should be Dismissed*

Plaintiff alleges that the individual Defendants are liable for gross negligence under state law. (**PageID.21**). Gross negligence does not exist as an independent cause of action in Michigan law. See, e.g., *Johnson v. Williams*, 2017 U.S. Dist. LEXIS 156149, at *48 (E.D. Mich. Sept. 25, 2017):

> However, Defendant correctly asserts that gross negligence claims no longer are independent causes of action under Michigan law, since the Courts have repudiated contributory negligence principles and adopted comparative negligence. Rather, gross negligence exists as a way to plead around state imposed qualified immunity, as explained above, and to establish caps on damages. Thus, while gross negligence is an important substantive concept under Michigan law, there is no independent cause of action for gross negligence." (citations omitted)) (**Exhibit B**)

See also, *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012) ("Michigan law does not, as Plaintiff implies, allow a claim sounding in medical malpractice to be brought as a 'gross negligence' claim under [state law], MCL § 691.1407. Instead, the courts appear to recognize that both governmental immunity and the malpractice requirements can apply to a plaintiff's claim.") (citing *Costa v. Cmty. Emergency Med. Servs., Inc.*, 716 N.W.2d 236 (Mich. Ct. App. 2006)); *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 433 (Mich. Ct. App. 2009) ("The governmental immunity statute does not itself create a cause of action called 'gross negligence.'").

Based on the above, Plaintiff's Gross Negligence claim should be dismissed.

5. *Plaintiff's Intentional Infliction of Emotional Distress Claim Should be Dismissed*

To establish a *prima facie* claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff. *Dalley v. Dykema Gossett, PLLC*, 287 Mich. App. 296, 321; 788 N.W.2d 679 (2010). "[O]nly when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community'" will liability attach. *Graham v. Ford*, 237 Mich. App. 670, 674; 604 N.W.2d 713 (1999). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability for intentional infliction of emotional distress. *Doe v. Mills*, 212 Mich. App. 73, 91; 536 N.W.2d 824 (1995). Initially, the trial court

must determine whether a defendant's conduct qualifies as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress. *Sawabini v. Desenberg*, 143 Mich. App. 373, 383; 372 N.W.2d 559 (1985).

Even accepting as true the allegations in Plaintiff's Complaint, they fail to describe conduct so extreme or outrageous that it surpasses all bounds of decency in a civilized society. Plaintiff alleges no facts at all connecting any actions of the VitalCore Defendants to Maslowski's emotional state. Finally, Plaintiff does not describe the nature of any alleged emotional distress suffered by Maslowski. Instead, Plaintiff merely presents two completely conclusory statements in its claim for intentional infliction of emotional distress which do not meet even the most minimum of pleading standards.

6. *Defendants Are Entitled to Qualified Immunity*

Even if Plaintiff has sufficiently alleged deliberate indifference against the VitalCore Defendants, "when the same conduct does not violate clearly established federal rights of which a reasonable person would have known, it is not necessary to decide whether a constitutional violation occurred." *Trozzi*, at 760; quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). In other words, finding that the individual VitalCore Defendants did not violate a clearly established right is a separate ground by which the case may be dismissed.

Qualified immunity is appropriate unless the officer in question had "fair notice" that her conduct was unlawful. *Id.*at 761, citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). To provide such notice, the scope of the constitutional right must be "sufficiently clear that every reasonable official would have understood that what she is doing violates that right." *Id.*, citing *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 7, 211 L.Ed.2d 164 (2021) (per curiam). Whether the official had such notice is "judged against the backdrop of the law at the time of the conduct." *Brosseau*, at 198. Critically, clearly established law is not defined at a "high…level of

generality." *City of Tahlequah v. Bond*, 142 S.Ct. 9, 11, 211 L.Ed.2d 170 (2021). While a case need not be "directly on point for a right to be clearly established," the burden is on the plaintiff to show that closely analogous precedent has placed the "constitutional question beyond debate." *Cunningham v. Shelby County*, 994 F.3d 761, 764 (6th Cir. 2021), quoting *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 551, 196 L.Ed. 463 (2017) (per curiam)).

In *Dominguez v. Correctional Medical Services*, 555 F.3d 543, 546-48 (6th Cir. 2009), the Sixth Circuit denied a prison nurse's motion for summary judgment, holding that a reasonable jury could find that she was deliberately indifferent to a prisoner's serious medical needs, which ultimately led to his paralysis when the nurse failed to provide him with any medical care. The Court found that the nurse had been notified of the prisoner's deteriorating condition 4 times, knew that he was suffering from heat exhaustion and had lost consciousness, saw him exhibit objective symptoms of illness, yet provided him with no medical care. *Id.*

In *Trozzi*, however, the Court rejected the plaintiff's reading of *Dominguez* as establishing a broad proposition that trained medical professionals who make inmates wait for several hours for medical treatment exhibit deliberate indifference. 29 F.4th at 762. The *Trozzi* Court found that the defendant nurse did not know if Trozzi had a serious internal injury or merely a non-emergent stomach ache. *Id.* See also, *Hernandez v. Mesa*, 137 S.Ct. 2003, 2007, 198 L.Ed.2d 625 (2017) (per curiam) ("The qualified immunity analysis thus is limited to 'the facts that were knowable to the defendant officers' at the time they were engaged in the conduct in question." (quoting *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 550, 196 L.Ed.2d 463 (2017))).

In this case, Plaintiff alleges that Maslowski "was suffering from a serious medical condition, in this case, brain hemorrhaging." (**PageID.20**). Plaintiff further alleges that Maslowski was "suffering from chronic headaches." (**PageID.9**). Plaintiff does not, however, does not allege

that the VitalCore Defendants knew or reasonably should have known that Maslowski had brain hemorrhaging rather than merely non-emergent headaches. Even accepting Plaintiff's allegation that Maslowski suffered from brain hemorrhaging, there is no allegation that this fact was knowable to the VitalCore Defendants at the time they treated him.

As such, the VitalCore Defendants are entitled to qualified immunity.

## IV. CONCLUSION AND RELIEF REQUESTED

WHEREFORE, VITALCORE HEALTH STRATEGIES, LLS, DAVID DEGRAFF, R.N., MARY SUE MACMILLAN, R.N., and SONYA RAWLS, R.N., respectfully request that this Honorable Court grant this Motion, dismiss Plaintiff's claims against them with prejudice, and provide any and all further relief that is just and equitable.

Respectfully submitted,
CHAPMAN LAW GROUP

Dated: December 16, 2022

*/s/John C. Cardello*

Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
John C. Cardello (P58082)
Attorneys for VitalCore Defendants
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
jcardello@chapmanlawgroup.com

## PROOF OF SERVICE

I hereby certify that on December 16, 2022, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

*/s/John C. Cardello*

John C. Cardello (P58082)
1441 West Long Lake Rd., Suite 310
Troy, MI 48098

(248) 644-6326
jcardello@chapmanlawgroup.com