UNITED STATES DISTRICT COUR
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI VIILO, Personal
Representative for the Estate of
JOSHUA JOSEPH MASLOWSKI,

    Plaintiff,                           Hon. Jane M. Beckering

v.                                             Case No. 1:22-cv-962

KENT COUNTY, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 40). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff asserts this action against: (1) VitalCore Health Strategies, LLC; (2) Kent County; (3) fourteen named individuals; and (4) one unnamed individual. (ECF No. 36). In her amended complaint, Plaintiff asserts the following.

On March 4, 2021, Joshua Maslowski was arrested and booked into the Kent County Jail on assault-related charges. At some point during this process, Maslowski "reported a head injury, auditory and visual hallucinations, seeing flashing lights, and suffering from chronic headaches." On March 6, 2021, Maslowski "gave written

-1-

authorization to VitalCore for medical treatment, and disclosed his pharmacies and daily prescription medications, including tramadol, neurontin, abilify, protonix, vistaril, and bactram."

On March 8, 2021, Maslowski experienced "an episode of CP."[1] The following day, Maslowski reported to Unknown VanderMolen that he "thought" he had suffered a concussion. Maslowski reported that his "head was pounding" and he was "seeing flashing lights." Maslowski requested "medical attention" and "psych medication." Lindsey Lucas "was notified. . . but nothing was done."

On March 11, 2021, Maslowski reported to AJ Bernhardt that he "was hit in the head with a pipe before going into jail, complained of bloody stool, bad headaches, and a broken ear drum." Mary MacMillan "was likewise informed by [Maslowski] and asked to stop ibuprofen, start Excedrin migraine medication, and to see a psychiatric doctor." Neither Bernhardt nor MacMillan provided Maslowski with treatment.

On March 20, 2021, Maslowski "complained of headache" to Cheyenne Smith who "disregarded" Maslowski's need for medical treatment. Maslowski's subsequent request to "see medical" was disregarded by BX Calder. Likewise, MacMillan took no action after Maslowski "complained of an ulcer." The following day, Plaintiff informed Smith that he "needed his medication," but Smith "did nothing."

---

[1] The Court is left to speculate to what "CP" refers, as Plaintiff has failed to define or identify it in her amended complaint.

-2-

On March 22, 2021, Maslowski's requests to "see medical" were disregarded by J. Spriggel and BX Calder. On March 24, 2021, Maslowski asked an unidentified person for Neurontin, but "nothing was done." On April 4, 2021, Timothy Bishop "could not awaken" Maslowski, but "nothing was done."

On April 14, 2021, Maslowski complained to Unknown Ritz that he was experiencing "constant headaches despite receiving two Tylenol packets that morning." Ritz took no action. That same day, Maslowski complained to Ritz that he was experiencing "severe" eye and head pain which had been "continuous for weeks." Ritz notified Sonya Rawls "who promised to send someone up to see [Maslowski]." Rawls, however, failed to send anyone to assist Plaintiff.

On April 15, 2021, Maslowski reported to Ritz that he was experiencing a "constant headache," but "no medical care was provided." Less than one hour later, Maslowski "was seen throwing up." Ritz "called medical to advise [Sonya Rawls]," but "no medical care was provided." Approximately one hour later, Maslowski "had a seizure during dinner." Maslowski's seizure was witnessed by Ritz, Unknown McNeil, Unknown Fennema, David DeGraff, and "other medical staff." DeGraff, however, "dismissed" the seizure as a possible anxiety attack. Plaintiff was not provided any medical treatment. The following day, Maslowski was discovered "unresponsive in his cell" at which point he was transported to a hospital. Maslowski passed away nine days later.

Plaintiff alleges that Defendants deprived Maslowski of medical treatment in violation of his Eighth and Fourteenth Amendment rights. Plaintiff also alleges that Defendants Kent County and Kent Count Sheriff Michelle LaJoye-Young violated Maslowski's constitutional rights by failing to properly train jail personnel. Finally, Plaintiff alleges that the individual defendants committed gross negligence and intentional infliction of emotional distress contrary to Michigan law. Defendants VitalCore, DeGraff, MacMillan, and Rawls now move for relief on the ground that Plaintiff's allegations fail to state a claim on which relief may be granted. Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*.  As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id*. at 678-79 (internal citations omitted).

## **ANALYSIS**

A.  Eighth Amendment Claims

Plaintiff alleges that Defendants failed to provide him with appropriate medical treatment.  Plaintiff alleges that this violated his Eighth Amendment and Fourteenth

Amendment rights. Plaintiff further alleges that during the time period relevant in this matter, Maslowski was properly characterized as a pretrial detainee.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06. The Eighth Amendment, however, does not apply to individuals, like Maslowski, who were pretrial detainees when the events giving rise to their claim occurred. *See, e.g., Greene v. Crawford County, Michigan*, 22 F.4th 593, 605 (6th Cir. 2022). Rather, the right enjoyed by pretrial detainees to be free from deliberate indifference to their serious medical needs arises from the Due Process Clause of the Fourteenth Amendment. *Ibid.* Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims be dismissed for failure to state a claim on which relief may be granted.

B.   VitalCore

During the time period relevant in this matter, several of the defendants were employed by VitalCore. Plaintiff alleges that VitalCore violated Maslowski's constitutional rights by failing to provide him with medical care.

Section 1983 is the means by which "persons" who violate the constitutional rights of others can be held accountable. *See* 42 U.S.C. § 1983. While "municipalities and other local governmental bodies" are considered "persons" under § 1983, these entities cannot be held liable under § 1983 solely because they employ a tortfeasor. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). Rather, a plaintiff must establish that he suffered a constitutional injury as a result of "official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Likewise, a private entity contracted to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function. *See, e.g., Winkler v. Madison County*, 893 F.3d 877, 904 (6th Cir. 2018). Just like a municipality, however, liability must be premised on "a policy or custom of *that private contractor*." *Ibid.* (emphasis in original).

Thus, to prevail on her claims against VitalCore, Plaintiff must demonstrate that Maslowski's rights were violated and that a VitalCore "policy or custom. . .was the moving force behind the deprivation of Maslowski's rights." *Perry v. Corizon Health, Inc.*, 2018 WL 3006334 at *1 (6th Cir., June 8, 2018). Plaintiff has failed, however, to allege *facts* which satisfy this standard. Plaintiff's legal conclusion that VitalCore is responsible in this matter is insufficient. Plaintiff's arguments in opposition to Defendant's motion are not persuasive.

First, Plaintiff cites to language in her original complaint. (ECF No. 41 at PageID.633). Because Plaintiff's original complaint is no longer the operative

complaint, the allegations in such cannot be relief upon to defeat Defendant's motion. Plaintiff next points to language, in paragraph 17 of her amended complaint, that "Defendants. . .are directly liable. . .for promulgation of and/or acquiescence to policies, practices, customs, and/or procedures which caused and/or contributed to the constitutional deprivation suffered by [Maslowski]." (ECF No. 36 at PageID.477; ECF No. 41 at PageID.635). This language asserts no facts which, if proven, demonstrate that Maslowski was injured by a VitalCore policy or custom.

Plaintiff next cites to language, in paragraph 13 of her amended complaint, asserting that VitalCore "was required to ensure that the personnel it employed at Kent County Jail complied with all Kent County and VitalCore policies, procedures, directives, and protocols in addition to all relevant local, state, and federal statutes, and regulations." (ECF No. 36 at PageID.476; ECF No. 41 at PageID.637). The Court discerns two shortcomings with this language. First, it does not allege facts, which, if proven, would establish that Maslowski was injured by a VitalCore policy or custom. Second, this language articulates a theory of respondeat superior which, as noted above, is not a basis for imposing liability on VitalCore.

Plaintiff also cites to language, in paragraph 11 of her amended complaint, which describes the duties of certain individual defendants which, according to Plaintiff, "were required to be carried out in a manner consistent with the legal mandates that govern the operation of County jails, including County policies, procedures, directives, and protocols, in addition to all relevant local, state, and federal statutes and regulations."

(ECF No. 36 at PageID.474-76; ECF No. 41 at PageID.636-37).  Once again, this language asserts no facts which, if proven, establish that was injured by a VitalCore policy or custom.  Moreover, whether individual VitalCore employees failed to comply with statutes, regulations, or policies enacted or promulgated by various governmental entities or units simply fails to shed any light on the question whether Maslowski was injured by a VitalCore policy or custom.

Finally, Plaintiff's argument that resolution of the present motion must await the completion of unspecified discovery (ECF No. 41 at PageID.634) is unpersuasive.  The Federal Rules of Civil Procedure permit a party opposing a motion for summary judgment to obtain a delay in resolution of such on the ground that further discovery is necessary.  *See* Fed. R. Civ. P. 56(d).  But the Federal Rules contain no analogous provision applicable to motions to dismiss under Rule 12(b)(6).  Likewise, the Court is unaware of any other authority that permits a party opposing a Rule 12(b)(6) motion to delay resolution of such on the ground that discovery is necessary.  *See, e.g., Top v. Ocean Petroleum, LLC*, 2010 WL 3087385 at *3 (D.N.J., Aug. 3, 2010) (a motion under Rule 12(B)(6) "represents a checkpoint that must be cleared before a plaintiff can reach the discovery stage of litigation").

In sum, Plaintiff has failed to allege facts in her amended complaint which, if proven, would establish that Maslowski was injured due to a VitalCore policy or custom.  Accordingly, the undersigned recommends that Plaintiff's claims against Defendant VitalCore be dismissed for failure to state a claim on which relief may be granted.

C.  Defendants MacMillan, Rawls, and DeGraff – Federal Claims

As noted above, because Maslowski was a pre-trial detainee when the events giving rise to this action occurred, Plaintiff's deliberate indifference claims, based on an alleged denial of medical treatment, are analyzed under the Fourteenth Amendment.

Previously, deliberate indifference claims under the Eighth and Fourteenth Amendments were analyzed "under the same rubric." *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). Following the decision by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), however, the analysis applicable to these claims has diverged. Specifically, with respect to Fourteenth Amendment deliberate indifference claims, the second prong of the analysis has been modified.

With respect to the initial prong of the analysis, both Eighth and Fourteenth Amendment claims require the plaintiff to demonstrate that he was experiencing a serious medical need. The second prong of the analysis concerns what a plaintiff must prove an official knew or should have known regarding his need for medical care. This is where the two analyses diverge. The Eighth Amendment standard requires the plaintiff to establish that the defendant "was *subjectively* aware" of the serious medical need and disregarded such by failing to "take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). This requires the plaintiff to demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

The Fourteenth Amendment standard, however, because pretrial detainees have not been convicted and, therefore, cannot by "punished," requires a slightly lesser showing. A plaintiff need only show that the defendant acted with recklessness, described as "more than negligence but less than subjective intent – something akin to reckless disregard." *Mercer v. Athens County, Ohio*, 72 F.4th 152, 161 (6th Cir. 2023). Stated differently, a plaintiff must demonstrate that the defendant "acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Greene v. Crawford County, Michigan*, 22 F.4th 593, 606 (6th Cir. 2022). Furthermore, the Court must "consider each defendant individually because we cannot impute knowledge from one defendant to another." *Mercer*, 72 F.4th at 161.

1. Defendant MacMillan

Plaintiff asserts two claims against MacMillan. First, Plaintiff alleges that, on March 11, 2021, Maslowski informed MacMillan that he had previously been "hit in the head with a pipe" and was now experiencing "bloody stool, bad headaches, and a broken ear drum." (ECF No. 36 at PageID.481). Maslowski allegedly requested migraine medication and to visit with a "psychiatric doctor." MacMillan allegedly disregarded Maslowski's requests. Plaintiff also alleges that on March 20, 2021, MacMillan took no action after Maslowski "complained of an ulcer." (*Id.*).

-11-

a. March 11, 2021

Defendant argues that she cannot be held liable for the alleged failure to provide Plaintiff with "non-prescription medication." The Court disagrees. Defendant's argument disregards the context in which Maslowski's request was made. Plaintiff alleges that prior to requesting "non-prescription medication," Maslowski informed MacMillan that he had previously been struck in the head with a pipe, was now experiencing "bloody stool, bad headaches, and a broken ear drum." These allegations, if proven, clearly constitute a serious medical need.

Regarding the second prong of the analysis, Defendant cannot simply argue that because Maslowski requested "non-prescription medication" her alleged failure to act satisfied her constitutional obligations. It might be reasonable for a lay person, such as a jail guard, to fail to understand the potential significance of the situation alleged by Plaintiff. As a Registered Nurse, however, MacMillan is expected to assess a situation not merely by reference to the particular medication or treatment requested by an inmate, but by also considering all other known or knowable facts and circumstances. Here, Plaintiff alleges that Maslowski informed MacMillan that he had suffered a potentially significant injury and was experiencing several potentially serious health concerns. By arguing, in effect, that she was free to disregard this information simply because Maslowski requested minimal treatment, MacMillan is arguing that she reasonably relied on Maslowski's medical judgment in allegedly deciding to take no action. Defendant has identified no authority for the novel proposition that a medical

professional discharges their constitutional obligations by relying on the medical opinion expressed by a lay prisoner.

A brief example, perhaps, makes the point more clearly. Assume that an inmate is suffering a readily observable abdominal wound in which a portion of his intestines are protruding. Further assume that the inmate then walks up to a nurse and requests a band-aid. The nurse cannot deny medical treatment to the inmate on the ground that, because the inmate only requested a band-aid, she reasonably believed that his medical condition was not serious and that failure to act would not endanger the inmate's health. The current situation differs only in degree. The facts may ultimately support a finding that MacMillan acted reasonably, but at this juncture, interpreting the facts in Plaintiff's favor, the Court finds that Plaintiff's allegations state a claim on which relief may be granted.

    b.    March 20, 2021

The Court reaches the opposite conclusion as to this allegation, however. Plaintiff alleges that Maslowski "complained of an ulcer" to MacMillan. Plaintiff does not allege facts indicating that Maslowski's ulcer was producing significant or obviously discernable symptoms. Moreover, Plaintiff does not allege that Maslowski requested treatment or other assistance from MacMillan. Plaintiff merely alleges that Maslowski complained of a relatively common, non-observable, malady. In the Court's estimation, Plaintiff's allegations are indistinguishable from somebody complaining of a "bad back" or a "stiff knee," common conditions that, without more, cannot be assumed to require

prompt medical attention. Thus, even if the Court assumes that an ulcer constitutes a serious medical condition, Plaintiff has failed to allege facts from which a reasonable juror could conclude that MacMillan's alleged failure to take action recklessly subjected Maslowski to potential harm.[2] Accordingly, the undersigned recommends that this claim be dismissed.

   2.   Defendant Rawls

Plaintiff likewise advances two allegations against Defendant Rawls. Plaintiff first alleges that on April 14, 2021, Maslowski reported to Unknown Ritz that he was experiencing chronic severe eye and head pain. (ECF No. 36 at PageID.483). After being notified by Ritz of Maslowski's circumstance, Rawls "promised to send someone up to see [Maslowski]." Rawls allegedly failed to follow through on this promise, however, and instead took no action to assist Maslowski. Plaintiff also alleges that Ritz later informed Rawls that Maslowski was "seen throwing up." Rawls allegedly took no action in response to this information. (*Id.*).

   a.   Eye and Head Pain

Chronic and severe eye and head pain constitutes a serious medical impairment. Moreover, it is reasonable to interpret Rawls' alleged promise to send someone to treat Maslowski as an indication, in Rawls' mind, that Maslowski's circumstance necessitated treatment. Thus, a reasonable juror could conclude that by failing to act, Rawls

---

[2] While the Court must interpret a pro se plaintiff's pleadings indulgently, no such accommodation applies where the plaintiff is represented by an attorney.

recklessly subjected Plaintiff to possible harm. Accordingly, the Court finds that these allegations state a claim on which relief may be granted.

      b.     Throwing Up

Again, the Court reaches a different conclusion with respect to this allegation. Plaintiff alleges nothing more than Rawls was informed that Plaintiff had been observed "throwing up." Plaintiff alleges no facts to suggest that this occurrence, or the circumstances surrounding such, were sufficiently serious to warrant prompt medical attention. Thus, even if the Court assumes that "throwing up" constitutes a serious medical condition, Plaintiff has failed to allege facts from which a reasonable juror could conclude that Rawls' alleged failure to take action recklessly subjected Maslowski to potential harm. Accordingly, the undersigned recommends that this claim be dismissed.

      3.     Defendant DeGraff

Plaintiff alleges that on April 15, 2021, DeGraff took no action to secure treatment or assistance for Maslowski after witnessing Maslowski suffer a seizure. (ECF No. 36 at PageID.483-84). These allegations clearly state a claim. Experiencing a seizure satisfies any definition of a serious medical need. Moreover, a reasonable juror could conclude that the alleged failure to take any action in response to witnessing an inmate suffer a seizure exhibits reckless disregard that serious harm that could result from inaction. The undersigned recommends, therefore, that Defendant DeGraff's motion to dismiss be denied.

D.   Defendants MacMillan, Rawls, and DeGraff – State Claims

Plaintiff also alleges that Defendants' conduct constitutes gross negligence and intentional infliction of emotional distress under Michigan law.

1.   Intentional Infliction of Emotional Distress

Under Michigan law, to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege the following: (1) the defendant's conduct was "extreme and outrageous," (2) the defendant acted with "intent or recklessness," and (3) the defendant's conduct caused the plaintiff to suffer "severe emotional distress." *Lucas v. Awaad*, 830 N.W.2d 141, 150 (Mich. Ct. App. 2013).

The standard for establishing that conduct is "extreme and outrageous" has been described as "formidable." *Martin v. Smith*, 2020 WL 7310960 at *5 (Mich. Ct. App., Dec. 10, 2020) (citation omitted). Specifically:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Ibid.* (citation omitted).

Even affording Plaintiff's allegations the most favorable interpretation, none of the conduct alleged by these defendants satisfies this standard. *See, e.g., Jones v. Muskegon County*, 625 F.3d 935, 942-48 (6th Cir. 2010) (evidence that a defendant was deliberately indifferent to an inmate's serious medical needs is insufficient to sustain a

-16-

claim for intentional infliction of emotional distress). Accordingly, the undersigned recommends that these claims be dismissed.

2. Gross Negligence

Plaintiff asserts a claim for "gross negligence in avoidance of governmental immunity." This "claim" fails for two distinct reasons. Under Michigan law, "gross negligence is not an independent cause of action." *White v. City of Southfield*, 2022 WL 17736348 at *10 (E.D. Mich., Dec. 16, 2022) (citation omitted). Instead, establishing gross negligence "is a prerequisite to avoiding [a defendant's] statutory governmental immunity." *Ibid.* (citation omitted). Thus, to the extent Plaintiff seeks to assert a separate cause of action for gross negligence, the undersigned recommends such be dismissed. Moreover, the Court need not consider whether there exists gross negligence so as to preclude an assertion of tort immunity by Defendants because Plaintiff's only other state law claim must be dismissed for failure to state a claim as discussed above.

E. Qualified Immunity

Finally, with respect to the three Fourteenth Amendment claims which the Court recommends go forward, Defendants assert that they are entitled to qualified immunity. The Court is not persuaded.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly

terminated. *Ibid.* When government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).

For a right to be clearly established there must exist "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (citation omitted). Court decisions examining matters at a "high level of generality" do not constitute clearly established law because such "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Ibid.* (citation omitted). The plaintiff need not locate authority in which "the very action in question has previously been held unlawful," but "in light of pre-existing law the unlawfulness [of the defendant's actions] must be apparent." *Ibid.* (citation omitted). This does not require the plaintiff to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Sixth Circuit has cautioned that "it is generally inappropriate. . .to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). While qualified immunity should be resolved "at the earliest point. . .that point is usually summary judgment and not dismissal under

Rule 12" because "development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Ibid.*

Regarding the three claims above which the Court finds sufficient to avoid dismissal, and interpreting the allegations in Plaintiff's favor, any reasonable defendant would understand that taking no action in response to an inmate experiencing a serious medical need violates the inmate's constitutional rights. That inaction in response to an inmate's serious medical need violates the Constitution was clearly established when the events giving rise to this case took place. *See, e.g., Griffith v. Franklin County, Kentucky*, 975 F.3d 554, 566-71 (6th Cir. 2020).[3]

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 40) be granted in part and denied in part. Specifically, the undersigned recommends that: (1) Plaintiff's claims against Defendant VitalCore be dismissed; (2) Plaintiff's claim against Defendant DeGraff proceed forward; (3) Plaintiff's claim that Defendant MacMillan denied him medical treatment on March 11, 2021, proceed forward; (4) Plaintiff's claim that Defendant MacMillan denied him medical treatment on March 20, 2021, be dismissed; (5) Plaintiff's claim that Defendant Rawls

---

[3] Defendants have not argued that qualified immunity is appropriate based upon the modification of the deliberate indifference analysis, vis-à-vis a defendant's subjective state of mind, discussed herein. Any such argument is unpersuasive, however, because with respect to the three claims which the Court recommends go forward, Plaintiff's allegations satisfy both the traditional Eighth Amendment standard as well as the now modified Fourteenth Amendment standard.

denied him medical treatment for eye and head pain, proceed forward; and (6) Plaintiff's claim that Defendant Rawls denied him medical treatment in response to throwing up be dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: September 13, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge